## UNITED STATES v. NORDALE.

(Fourth Division. Fairbanks. October 28, 1922.)

No. 2614.

**1. Intoxicating Liquors ⊙⇒278—Injunction—Contempt.**

After a restraining order has been issued by the court, no agreement of attorneys in the case can change the terms of the order, unless such agreement is communicated to the court and the original restraining order modified to the extent indicated by the communicated agreement.

**2. Intoxicating Liquors ⊙⇒279—Injunction—Contempt.**

The defendant was proceeded against under the Volstead Act to declare his premises to be a nuisance for selling intoxicating liquors therein. A restraining order was entered, that he be enjoined and restrained from using the premises, or permitting others to do so, in violation of the Volstead Act and the Alaska Bone Dry Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919 §§ 3643b–3643r). He was brought before the court for violation of the restraining order, and upon the evidence found guilty of contempt of the orders of the court, and fined $750.

The defendant is accused by an information of the violation of a restraining order issued by the court on the 6th day of June, 1922, in a case then and there pending in this court, being No. 2582 in equity.

This case was instituted, it is assumed, under the provisions of section 22 of what is known as the Volstead Act (41 Stat. 305). While the complaint in the original case also refers to the Bone Dry Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r) applicable to Alaska, no contention is made or relief asked for under the latter act, nor has the latter act been adverted to at all throughout the trial by the government, and although the court is not directly advised by the government attorneys, apparently they rely upon the Volstead Act.

The information charging the contempt recites the fact of the pendency of this case in equity against the defendant and the issuance of a restraining order, and recites, in substance, the contents of the restraining order, and then goes on to say that subsequent thereto, and on the 18th day of September, after the issuance and service of the restraining order, two

⊙⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

deputy marshals visited the premises described in the original bill in equity and in the restraining order—

"and found the defendant A. J. Nordale in the act of manufacturing, selling, keeping on hand for sale and use, and unlawfully furnishing intoxicating liquors, to wit, beer and hard cider containing largely in excess of one-half of 1 per cent. of alcohol, in violation of law and the order of this court, which said defendant was then and theretofore, and since the service of said restraining order had been, unlawfully keeping on hand for sale or use, selling, and furnishing to be drunk upon the premises and otherwise."

The restraining order in the original case, of which this complaint charges a violation, recites as follows:

"It is ordered that the defendants, and each of them, appear before this court on the 26th day of June, A. D. 1922, at the hour of 10 o'clock a. m., and show cause, if any they have, why they, and each of them, should not, during the pendency of this suit, be enjoined and restrained from occupying or using, by themselves or either of them, or by or through any person acting by, through or under them, that certain barroom appertaining to the Nordale Hotel, situate on lot 4, in block 4, in the town of Fairbanks, in said territory and division, or the appurtenances thereof, or thereat, therein, or therefrom conducting or carrying on the business of soft drink establishment, or candy, cigars, and tobacco stand, or pool room, or for the storing, keeping on hand for sale, selling, bartering, offering for sale or exchange for goods, or otherwise unlawfully furnishing, intoxicating liquors, or permitting others so to do, in violation of the Alaska Bone Dry Act or of title 2, National Prohibition Act.

"Pending said hearing, you, and each of you, the said defendants, are hereby restrained and enjoined from carrying on the business of soft drink establishment, or candy, cigars, and tobacco stand, or pool room, in said described premises, and from storing, keeping on hand for sale, offering for sale or exchange for goods, selling, bartering, or otherwise unlawfully furnishing intoxicating liquors, or permitting others so to do, or to use or occupy, or permit others to use or occupy, said described premises for such or any of said purposes, until the further order of this court.

"It is further ordered that a copy of the complaint herein and of this order be served upon the defendant A. J. Nordale, the owner and manager, or reputed owner and manager, of said business and premises above described.

"Dated at Fairbanks, Alaska, this June 6, 1922."

The defendant has entered a plea of not guilty to the information, a trial has been had before the court, and certain testimony been introduced by the government and by the defendant.

Guy B. Erwin, U. S. Atty., of Fairbanks.
Morton E. Stevens, of Fairbanks, for defendant.

CLEGG, District Judge.   The government attorneys do not indicate clearly to the court under what law they are proceeding, and they have refused to make any argument after all the testimony has been introduced, or to outline to the court what theory they rely upon to show the defendant guilty of violating the restraining order.

On the other hand, the defendant, through his attorney, represents and argues to the court, and reiterates in argument, the various legal points upon which he relies for an acquittal.

But the court being satisfied, from all the evidence and the law, that a violation of the injunction exists, it devolves upon the court to indicate what theory at least the court follows in finding the defendant guilty.

The uncontradicted testimony is that on the 18th of September, 1922, on his premises described in the original complaint and in the restraining order, he was found in the possession of beer and cider of high alcoholic content; that he had all the appliances for the bottling of the same, which, when found, was in large casks of 45 gallons' or upwards capacity; that some of it was stored in a place convenient to the barroom and in a room formerly used as an old kitchen in the hotel building, and that a small flask or bottle, which has been exhibited in evidence, was also found in a cubby hole behind the bar in the barroom of the premises described in the complaint, which, according to the uncontradicted testimony, contained white mule whisky; that part of the cider referred to in the testimony was discovered in the cellar underneath the barroom, which could be reached by means of a cellar door therefrom; and that at the time of the visit of the deputy marshals on two occasions, on the 16th and 18th of September, there were people in one of the rooms, connected with the barroom by a hallway, drinking the beer that was found there and testified to by the witnesses.   There is no contradiction of the testimony of the chemist as to the alcoholic content of this beer and cider, so that the court must accept the testimony of the witness Hopkins that, under the tests which he testified he made of those liquids, there was at least 5 per cent. of alcohol by volume contained therein.

There is some testimony to show that after the issuance of the restraining order an agreement was entered into, the exact purport and effect of which·is not clear to the court, between the government attorneys and the then attorney for the defendant, Mr. Marquam, that it would be unnecessary for the defendant to close up any part of the Nordale Hotel under the terms of the injunction, provided he thereafter strictly observed the provisions of law with reference to the unlawful manufacture and sale, or offering for sale, of intoxicating liquors.

It goes without saying that after a restraining order has been issued by the court, and it is well understood by all attorneys practicing at this bar, no agreement of attorneys can change the terms of the order, unless such agreement is communicated to the court and the original restraining order modified to the extent indicated by the communicated agreement.

So long as no modification of the original restraining order is made lawfully, we must assume that the restraining order is in force. But it is not for the violation of that part of the restraining order which prohibits the defendant from occupying the barroom that he is now on trial, or that the court is considering, but it is merely that portion of the restraining order which prohibits him from using any part of the premises for the unlawful sale, or manufacture, or disposing of alcoholic liquors as prohibited by the Volstead Act.

The defendant has been here during the entire course of the trial, and although the government attorneys did not insist upon calling him as a witness, nor did the attorney for the defendant place the defendant upon the stand, the defendant has made no effort whatever to purge himself of the contempt charge made by the information. He merely sits here an interested spectator, and in no way, except by the efforts of his attorney, attempts to explain the charge against him. Although ·his attorney relies upon the effect of the agreement between the attorneys for the parties in the original case, he does not claim that the defendant was misled, or overreached, or confused by any act of the government attorneys; nor is there anything to show that, assuming whatever effect such an agreement did have, the defendant ever at any time assumed, or thought, or believed that he had a right to continue to manufacture, sell, or otherwise dispose of, intoxicating liq-

uors, as defined by the Volstead Act, on the hotel premises, and expect at the same time that it would not be contended by the government attorneys that such acts on his part were not a violation of the terms of the restraining order.

The restraining order, as I view it, enjoins and restrains the defendant, not only from occupying or using the barroom in the Nordale Hotel, but from using the entire Nordale Hotel building or its appurtenances.

The restraining part of the order itself refers to the previous paragraph, in which the property is described which is affected by the restraining order, and in that paragraph it is said:

"It is ordered that the defendants, and each of them, appear before this court on the 26th day of June, A. D. 1922, at the hour of 10 o'clock a. m., and show cause, if any they have, why they, and each of them, should not, during the pendency of this suit, be enjoined and restrained from occupying or using, by themselves or either of them, or by or through any person acting by, through, or under them, that certain barroom appertaining to the Nordale Hotel, situate on lot 4, in block 4, in the town of Fairbanks, in said territory and division, or the appurtenances thereof, or thereat, therein, or therefrom conducting or carrying on the business of soft drink establishment, or candy, cigars, and tobacco stand, or pool room, or for the storing, keeping on hand for sale, selling, bartering, offering for sale or exchange for goods, or otherwise unlawfully furnishing intoxicating liquors, or permitting others so to do, in violation of the Alaska Bone Dry Act or of title 2, National Prohibition Act."

, Following we have this paragraph:

"Pending said hearing, you, and each of you, the said defendants, are hereby restrained and enjoined from carrying on the business of soft drink establishment, or candy, cigars, and tobacco stand, or pool room, in said described premises."

Well, it must mean the premises described in the preceding paragraph, because that is the only place where any premises are described, and that "the said described premises" would therefore mean "that certain barroom appertaining to the Nordale Hotel, situate on lot 4, in block 4, in the town of Fairbanks, in said territory and division, or the appurtenances thereof," and the words "or the appurtenances thereof" would apply to the Nordale Hotel, situate on lot 4, in block 4, in the town of Fairbanks, in said territory and division, and would not apply to the word "barroom," because, if it was intended

that it apply to the word "barroom," it would say "that certain barroom, or the appurtenances thereof, appertaining to the Nordale Hotel." In the same paragraph which restrains the defendants, a second time the words "said described premises" are used without any qualification, and the court takes the view that the words as there used also bear the same construction as those same words do in the earlier portion of that paragraph.

Now, it is urged by the defendant that this restraining order would naturally, unless it was called up on the 26th day of June, become functus officio, or die of its own weight, and that the burden is upon the government at that time, if they intend to keep it alive, to call it up and perpetuate it. But the Volstead Act, in section 22, says:

"If it is made to appear by affidavits or otherwise, to the satisfaction of the court, or judge, * * * that such nuisance exists, a temporary writ of injunction shall forthwith issue restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the trial."

It is true that the wording of this restraining order does not contain the provision that it shall extend until the conclusion of the trial, as it well might have; but it does say that the defendants are required to appear, in effect, and show cause, if any they have, why they, and each of them, should not, during the pendency of this suit, be enjoined and restrained from occupying or using, etc.; that is to say, if the defendants feel aggrieved by the issuance of the restraining order, that at that time and place they may appear and resist the same, or ask to have the same set aside, vacated, or modified, according as they may wish.

And the last paragraph but one of the restraining order says that the acts, the doing of which the defendants are restrained from, shall continue restrained in effect until the further order of the court. So that the court clearly, according to the testimony, has never made any order whatever abrogating the terms of the restraining order, or modifying it in any respect; but, as I have said before, if the defendant was aggrieved by reason of any of the matters now pointed out to the court as exceeding its authority, or being improvidently issued, or inadvertently issued, it was the right and duty of the defendant to call those matters to the attention of the

court, and at least have a hearing upon them, and not now to insist, when he is tried for the violation thereof, that they were void, or that any portion of them was void, and that therefore he was not obliged to conform thereto.

The evidence would seem to show that the defendant promised his attorney that he would abandon any alleged acts of his in violation of the prohibition law, provided he was permitted the use of the barroom; that that was represented to the government attorneys, and they consented, so far as they could, to the undisturbed use of the barroom by him, notwithstanding the restraining order. But such an agreement on their part could only be to the effect that, so far as they were concerned, they would not insist upon the defendant observing that portion of the restraining order, and that, in case he did use the same for any purpose, they would not make a point of that against him or hold him responsible therefor. That, of course, is a proper agreement for the district attorney to enter into, if he sees fit, but it in no way binds the court.

The court finds that the restraining order was continuous, and was at no time, up to the 18th of September, from the 6th of June, 1922, otherwise than in full force and effect.

The court also finds that the defendant, in violation of the terms of the restraining order as charged in the information, had unlawfully in his possession beer and cider for the purposes of sale on the prohibited premises on the 18th day of September, 1922, and also on the 20th. While no offense is charged on that account, the same liquors, while not seized on the 18th, were, as shown by the testimony, in the possession of the defendant on the 18th.

From the testimony, also, it satisfies the court that this violation on the part of the defendant was willful and flagrant and contumacious.

If we assume that there was a valid agreement, or any agreement, on his part that, in return for concessions on the part of the government, he should thereafter refrain from violating the prohibition law, as is contended for by the defendant, these acts which the testimony shows clearly to have been committed by him on the 18th of September were directly in violation of that agreement, as well as the restraining order of the court and the prohibition laws, the Volstead Act.

It makes the court wonder what sanction would be sufficient

6 A.R.—48

to compel a man to observe the laws, when the direct prohibitions of the law themselves do not compel him to, when the restraining order of the court does not compel him to, and when his own personal agreement, given by and through his then attorney, does not compel him to.

It is said that the provisions of this Volstead Act should be liberally construed. But this court has no authority to vary or lessen the terms of the Volstead Act. This court is not the Congress, and its duty is to enforce the law as it appears to the court it is laid down.

Section 24 of this act says:

"In the case of the violation of any injunction, * * * the court, or * * * · a judge thereof, may summarily try and punish the defendant. * * * The trial may be had upon affidavits, or either party may demand the production and oral examination of the witnesses. Any person found guilty of contempt under the provisions of this section shall be punished by a fine of not less than $500 nor more than $1,000, or by imprisonment of not less than thirty days nor more than twelve months, or by both fine and imprisonment."

In accordance with the law and the evidence and the decision of this court, it is the judgment and sentence of the court now, Mr. Nordale, that you are guilty of the contempt charged in the information, and as punishment therefor you be fined in the sum of $750 and costs of this action.

An exception may be noted.

⊜See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes